IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:13-CV-288-D

| | |
|---|---|
| MICHELE P. PARKS, ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
|     Defendant. ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings [DE #22, #23 & #24] pursuant to Fed. R. Civ. P. 12(c). Plaintiff Michele P. Parks ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of her applications for a period of disability and Disability Insurance Benefits ("DIB").[1] The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties,[2] the undersigned recommends denying Claimant's Motion for Judgment on the Pleadings, granting Defendant's Motion for Judgment on the Pleadings, and upholding the final decision of the Commissioner.

---

[1] Claimant alleged that she "did not apply for title II benefits" and that the Social Security Administration ("SSA") completed and submitted the application for title II benefits for her. (DE #23.) According to the electronic copy of Claimant's verbal application for title II benefits in the SSA's records, Claimant did in fact apply for benefits under title II.

[2] Claimant has filed numerous supplemental documents. (*See* DE #27, 28, 29, 30, 33.) Because this court's role is one of appellate review, the undersigned has not considered as evidence any supplemental documents submitted by Claimant which are not included in the administrative record filed with the court.

## STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and DIB on July 22, 2008, alleging disability beginning January 1, 2008.[3] (R. 55, 140-42.) Her claim was denied initially and upon reconsideration. (R. 57-61.) A hearing before Administrative Law Judge Robert J. Phares ("ALJ") was held on January 6, 2011, at which Claimant appeared *pro se* and testified and a vocational expert ("VE") appeared and testified. (R. 33-47.) On March 11, 2011, the ALJ issued a decision denying Claimant's request for benefits. (R. 17-27.) On February 8, 2013, the Appeals Council denied Claimant's request for review. (R. 1-3.) Claimant then filed a complaint in this court seeking review of the now final administrative decision.

## STANDARD OF REVIEW

The scope of judicial review of a final agency decision denying disability benefits under the Social Security Act, 42 U.S.C. §§ 301 *et seq.*, ("Act') is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; [i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (internal quotation marks and citation omitted) (alteration in original). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270

---

[3] Claimant alleged disability beginning March 30, 1995. However, the ALJ changed the date to January 1, 2008, because that is the date on which the Claimant became insured for disability benefits.

F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589) (internal quotation marks omitted) (first and second alterations in original). Rather, in conducting the "substantial evidence" inquiry, the court determines whether the Commissioner has considered all relevant evidence and sufficiently explained the weight accorded to the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## DISABILITY EVALUATION PROCESS

In making a disability determination, the Commissioner utilizes a five-step evaluation process. The Commissioner asks, sequentially, whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1; (4) can perform the requirements of her past work; and, if not, (5) based on the claimant's age, work experience and residual functional capacity can adjust to other work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520; *Albright v. Comm'r of the Soc. Sec. Admin.*, 174 F.3d 473, 74 n.2 (4th Cir. 1999). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. *Id*.

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings

3

and conclusions based on the "special technique." 20 C.F.R. § 404.1520a(e)(3).

In this case, Claimant does not raise an objection to any particular finding made by the ALJ or to the ALJ's consideration of the record. (Pl.'s Mot. J. Pleadings [DE #23].) Rather, Claimant argues that her 2008 application for DIB under title II of the Act should have been approved without a review of the relevant medical evidence because she was found to be eligible for supplemental security income under title XVI of the Act in 1996. (Pl.'s Mot. J. at 1-4.)

## FACTUAL HISTORY

### I. ALJ's Findings

Applying the above-described five-step, sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 19.) Next, the ALJ determined Claimant had the following severe impairments: "a history of depressive disorder, chronic back pain and diabetes." (R. 20.) However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 20-21.) The ALJ expressly noted that he had considered listing 1.04, relating to back pain, listing 9.08, relating to diabetes, and listing 12.04, relating to mental impairments. (R. 20.) Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in no limitations in her activities of daily living, social functioning and concentration, persistence and pace, with no episodes of decompensation. (R. 20.)

Prior to proceeding to step four, the ALJ assessed Claimant's residual functional capacity ("RFC"), finding Claimant had the ability to perform "medium work with the following

4

limitations: limited to unskilled work with the performance of simple, routine, repetitive tasks."[4] (R. 21-25.) At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of her past relevant work. (R. 25.) Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 26.)

## II. Claimant's Testimony

At the time of Claimant's administrative hearing, Claimant was sixty years old and working as a part-time substitute teacher for the Wake County Public School System, where she had been employed for several years. (R. 37-42.) Claimant's duties as a substitute teacher include taking roll, counting the students, sending out attendance sheets, giving out assignments, playing films, and keeping up with the children. (R. 37-42.) Claimant's past work experience includes employment at "Hardees" and "Trojan Labor," where her duties included food preparation and cleaning. (R. 288.) Claimant attained a Master's degree in biology in 2009 from North Carolina Central University ("NCCU") and testified that she is actively pursuing a teaching certification from NCCU under the "Ticket to Work" program.[5] (R. 21, 37-38.) Claimant lives alone, does not drive and relies on public transportation. (R. 42-43.)

Claimant explained numerous medical conditions supporting her disability claim and her inability to work full-time. These medical conditions include depression, high blood pressure, an

---

[4] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, she can also do sedentary and light work. 20 C.F.R. § 404.1567(c).

[5] The "Ticket to Work" program is a vocational rehabilitation program offered by the SSA for recipients of benefits based on disability or blindness. 42 U.S.C. § 1320b-19(a). Claimant was assigned a "Ticket to Work" on March 27, 2007. (R. 256.)

5

enlarged heart, diabetes, chest tightness, post-traumatic stress disorder ("PTSD"), chronic back pain, and knee problems. Claimant last received mental health treatment in the year 2000, but produced a letter from Dr. Kristen Avery dated 2004 concerning her alleged PTSD and testified that she was taking anti-depressant medication. (R. 43-44.) Claimant had refused to attend a consultative psychiatric examination because she feared that mental health treatment would negatively affect her employment prospects. (R. 45.) Claimant testified that she had been receiving treatment for an enlarged heart, high blood pressure, and diabetes. Claimant stated she slipped and fell in a pet store in 2009, further injuring her back and knees. (R. 44.)

### III. Vocational Expert's Testimony

Theodore Sawyer testified as a VE at the administrative hearing. (R. 45.) The ALJ asked the VE to classify the Claimant's job as a substitute teacher. (R. 45.) The VE stated that it would be classified under the job title in the Dictionary of Occupational Titles ("DOT") as "Teacher Aide I." (R. 45.) The VE further testified that the DOT codes this as 099.327-010 and, as normally performed, this work is classified as light work in a skilled occupation at the specific vocational preparation level 6.

## DISCUSSION

Claimant contends that because she was found disabled under the definition set forth in 20 C.F.R. § 416.905 for purposes of supplemental security income ("SSI") under title XVI of the Act in 1996 and the "definition of disability under title II of the Act for purposes of disability insurance benefits is identical to the definition of disability under title XVI of the Act for purposes of supplemental security income," her "SSI disability should be adopted for purposes of her 2008 SSDI application and SSI benefits." (Pl.'s Mot. J. at 1-2.) The undersigned disagrees.

The Fourth Circuit's decision in *Albright* informs the review of this case. *Albright v.*

*Comm'r of Soc. Sec. Admin.*, 174 F.3d 473 (4th Cir. 1999). In *Albright*, the ALJ automatically denied a claimant's second disability claim on the basis of a finding made during the claimant's first disability claim, just over three years earlier. *Albright*, 174 F.3d at 477. The Fourth Circuit found this to be error, holding that it was "imprudent [for the ALJ] to pronounce, as a matter of law," that an individual's ability to perform in the workplace could not have diminished in the time between successive disability claims. *Id.*

In 2000, the Social Security Administration issued an Acquiescence Ruling 00-1(4) ("SSAR 00-1(4)") interpreting the Fourth Circuit's decision in *Albright*. SSAR 00–1(4) requires an ALJ to consider a prior disability determination and give it appropriate weight in light of all the relevant facts and circumstances when adjudicating a subsequent disability claim. SSAR 00–1(4), at *4. In doing so, the adjudicator should consider such factors as: "(1) whether the fact on which the prior finding was based is subject to change with the passage of time; (2) the likelihood of such a change, considering the length of time that has elapsed . . . ; and (3) the extent that evidence not considered in the [previous] final decision . . . provides a basis for making a different finding." *Id.*; *see also Melvin*, 602 F. Supp. 2d at 704 (holding that remand was not appropriate, even where the ALJ did not specifically refer to SSAR 00-1(4) or explain the exact weight given to a prior ALJ's findings, so long as the ALJ had considered all the evidence, including the claimant's prior attempts to get benefits, did not invoke *res judicata*, and applied the correct legal standard).

In this case, the ALJ carefully considered the "entire record" and made a finding that Claimant had previously been found disabled in 1996 and was continuing to receive SSI under title XVI of the Act. (R. 21, 36, 38.) Despite making these findings, the ALJ issued a decision denying Claimant's request for benefits. In his decision, the ALJ explained that Claimant

7

"receives SSI disability benefits but never received Title 2 disability benefits." (R. 21.) The ALJ reasoned that Claimant's condition did not prevent her from living alone, participating in the Ticket to Work program, obtaining a Master's degree in biology, pursuing a teaching certificate at NCCU, and working as a substitute teacher. (R. 21-22.) Further, the ALJ expressly states that he considered the "entire record," which includes the prior finding of disability and the ongoing SSI payments. Because approximately fifteen years had passed since the 1996 disability determination, the ALJ was not required to give great weight to it. *See* SSAR 00-1(4) at *4 (stating that the more time that passes, the less weight the adjudicator should give to the prior finding); *see also Albright*, 174 F.3d at 477 ("Although we might state with some assurance that a claimant's condition very likely remains unchanged within a discrete two-week period, we would grow ever less confident as the timeframe expands. Where, as here, the relevant period exceeds three years, our swagger becomes barely discernible.").

Unlike in *Albright*, the ALJ here did not invoke *res judicata* in connection with Claimant's current application for benefits. Rather, the ALJ considered the evidence relevant to the unadjudicated period that was the subject of Claimant's 2008 application. Therefore, the ALJ applied the correct legal standard and the ALJ's decision is supported by substantial evidence.

To the extent Claimant is relying on principles of collateral estoppel, her reliance is misplaced. Collateral estoppel or "issue preclusion" provides that once an issue is "actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on different causes of action involving a party to the prior litigation." *Collins v. Pond Creek Mining Co.*, 468 F.3d 213, 217 (4th Cir. 2006). For the principles of collateral estoppel to apply, there must be "identity of issues" – the issue sought to be precluded must be identical to the issue previously litigated. *Id.*

8

In this case, the issue is whether Claimant was disabled from January 1, 2008, when her period of insured status began, through September 30, 2011, when it ended. Because that issue had not been previously adjudicated, there is no "identity of issues," and therefore, the principles of collateral estoppel do not apply.

Claimant further argues that, according to 42 U.S.C. § 1320b-19(i), Defendant may not initiate a medical continuing disability review of her while she is receiving disability benefits under title XVI because she is using a "ticket" under the "Ticket to Work" program. (Pl.'s Mot. J. at 4-5.) Specifically, Claimant contends that the "spirit of the [SSA's] promise not to conduct a Continuing Disability Review for a Ticket to Work Participant" was violated when the ALJ assessed the medical evidence relevant to her 2008 application for DIB. The undersigned disagrees.

If a "Ticket to Work" participant meets program requirements, the Commissioner "may not initiate a *continuing disability review* or other review under *section 421* of this title of whether the individual is or is not under a disability . . . ." 42 U.S.C. § 1320b-19(i) (emphasis added); *see also* 20 C.F.R. §§ 411.160 – 411.165.

In this case, the review of the medical record relevant to Claimant's 2008 application was not a "continuing disability review." (R. 17-19.) The sequential evaluation process that applies when an individual files an application for DIB and SSI is conducted pursuant to different authority and involves different standards than "continuing disability reviews." *Compare* 20 C.F.R. §§ 404.1520(a), 416.920(a) (setting out the standard of review for applications for DIB and SSI) *with* 42 U.S.C. § 421(i); 20 C.F.R. §§ 404.1594(f), 416.994(b)(5) (setting out the standard for continuing disability reviews). There is no evidence that Claimant was subjected to a "continuing disability review" pursuant to 42 U.S.C. § 421(i) and 20 C.F.R. §§ 404.1594(f),

9

416.994(b)(5). Therefore, the ALJ's review of the medical record relevant to Claimant's 2008 application was in compliance with governing law.

## CONCLUSION

For the reasons stated above, the undersigned RECOMMENDS that Claimant's Motion for Judgment on the Pleadings [DE #22 & 23] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE #24] be GRANTED and the final decision of the Commissioner be AFFIRMED.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who shall have fourteen (14) days from the date of service to file written objections. Failure to file timely, written objections shall bar an aggrieved party from receiving de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Judge.

This 7th day of May 2014.

KIMBERLY A. SWANK
United States Magistrate Judge